UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 24-1900

Caption [use short title]

Motion for: reconsideration or reconsideration en banc

Parents Defending Education

v.

Croton-Harmon Union Free School District, et al.

Set forth below precise, complete statement of relief sought:

Plaintiff-Appellant seeks reconsideration or en banc

reconsideration of the panel's summary affirmance

order (Dkt.44.1) for the reasons set forth in the

attached motion.

MOVING PARTY: Defending Education

OPPOSING PARTY: Croton-Harmon Union Free School District, et al.

[ ] Plaintiff          [ ] Defendant

[■] Appellant/Petitioner   [ ] Appellee/Respondent

MOVING ATTORNEY: J. Michael Connolly

OPPOSING ATTORNEY: Steven C. Stern

[name of attorney, with firm, address, phone number and e-mail]

Consovoy McCarthy PLLC

Sokoloff Stern LLP

1600 Wilson Blvd, Suite 700, Arlington, VA 22209

179 Westbury Ave, Carle Place, NY 11514

703-243-9423, mike@consovoymccarthy.com

516-334-4500, sstern@sokoloffstern.com

Court- Judge/ Agency appealed from: S.D.N.Y. (Seibel, J.)

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
[■] Yes  [ ] No (explain):_____

Opposing counsel's position on motion:
[ ] Unopposed [■] Opposed [ ] Don't Know
Does opposing counsel intend to file a response:
[ ] Yes  [ ] No  [■] Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:

Has this request for relief been made below?  [ ] Yes [ ] No
Has this relief been previously sought in this court?  [ ] Yes [ ] No

Requested return date and explanation of emergency: _____

Is the oral argument on motion requested?  [ ] Yes  [■] No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  [ ] Yes  [■] No  If yes, enter date:_____

Signature of Moving Attorney:

/s/ J. Michael Connolly          Date: 05/06/2024      Service : [■] Electronic  [ ] Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# 24-1900

## United States Court of Appeals for the Second Circuit

Parents Defending Education,
*Plaintiff-Appellant*,

v.

Croton-Harmon Union Free School District, *et al.*,
*Defendants-Appellees*.

On Appeal from the United States District Court for the
Southern District of New York, No. 7:24-cv-4485 (Seibel, J.)
————————————

**PLAINTIFF-APPELLANT DEFENDING EDUCATION'S
MOTION FOR PANEL REHEARING AND REHEARING EN BANC**
————————————

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423

J. Michael Connolly
James F. Hasson
Daniel M. Vitagliano*
Paul R. Draper*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Supervised by principals of the firm who are
admitted to practice in Virginia

*Counsel for Defending Education*

# TABLE OF CONTENTS

Table of Authorities................................................................................................ii

Rule 40 Statement .................................................................................................1

Background .............................................................................................................2

Reasons for Granting the Motion ........................................................................4

    I.      As a matter of first principles, associations have standing to vindicate their members' rights under §1983. ...................................................4

    II.     *Aguayo*'s contrary holding conflicts with every other circuit and the Supreme Court..................................................................................7

    III.    Associational standing under §1983 is an important issue.............................11

Conclusion ...........................................................................................................13

Certificate of Compliance ..................................................................................14

Certificate of Service ..........................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Nev. v. Heller*,
  378 F.3d 979 (9th Cir. 2004) ............................................................... 8

*Aguayo v. Richardson*,
  473 F.2d 1090 (2d Cir. 1973) ...............................................1, 3, 5, 7, 9

*All. for Open Soc'y Int'l v. USAID*,
  570 F. Supp. 2d 533 (S.D.N.Y. 2008) ............................................... 5

*Bach v. Pataki*,
  408 F.3d 75 (2d Cir. 2005) .................................................................. 5

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004) ............................................................... 6

*Bldg & Constr. Trades Council of Buffalo v. Downtown Development*,
  448 F.3d 138 (2d Cir. 2006) ............................................................. 12

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for Bos.*,
  89 F.4th 46 (1st Cir. 2023) ................................................................. 8

*Brown v. Buhman*,
  822 F.3d 1151 (10th Cir. 2016) ....................................................... 12

*Building and Construction Trades Council of Buffalo, New York and Vicinity v. Downtown
  Development, Inc.*,
  448 F.3d 138 (2d Cir. 2006) ............................................................... 4

*Burwell v. Hobby Lobby*,
  573 U.S. 682 (2014) ........................................................................... 9

*Centro de la Comunidad Hispana v. Oyster Bay*,
  868 F.3d 104 (2d Cir. 2017) ................................................ 1, 7-10, 12

*Chapman v. Houston Welfare Rts. Org.*,
  441 U.S. 600 (1979) ........................................................................... 8

*Clarke v. Secs. Indus. Ass'n*,
  479 U.S. 388 (1987) ........................................................................... 8

*Contractors Ass'n of E. Pa. v. Philadelphia*,
  945 F.2d 1260 (3d Cir. 1991) ............................................................ 8

*DCCC v. Kosinski*,
  614 F. Supp. 3d 20 (S.D.N.Y. 2022) ............................................... 10

*Do No Harm v. Pfizer*,
  126 F.4th 109 (2d Cir. 2025)....................................................... 3-4

*Do No Harm v. Pfizer*,
  646 F. Supp. 3d 490 (S.D.N.Y. 2022) ...........................................12

*Do No Harm v. Pfizer*,
  96 F.4th 106 (2d Cir. 2024)............................................................3

*FDA v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024) ........................................................... 1, 5, 11

*Friends of the Earth v. Laidlaw Env'tl Servs.*,
  528 U.S. 167 (2000) .......................................................................4

*Hague v. CIO*,
  307 U.S. 496 (1939) .......................................................................9

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ..............................................................4, 5, 8-9

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
  341 U.S. 123 (1951) .......................................................................5

*Knife Rights v. Vance*,
  802 F.3d 377 (2d Cir. 2015) .................................................... 10, 12

*League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*,
  737 F.2d 155 (2d Cir. 1984) ..................................................... 8, 10

*Memphis A. Philip Randolph Inst. v. Hargett*,
  2 F.4th 548 (6th Cir. 2021) ............................................................8

*Mental Disability Law Clinic v. Hogan*,
  519 F. App'x. 714 (2d Cir. 2013) .................................................10

*Metro. Wash. Chapter, Associated Builders & Contractors v. District of Columbia*,
  62 F.4th 567 (D.C. Cir. 2023) ........................................................8

*Milwaukee Police Ass'n v. Flynn*,
  863 F.3d 636 (7th Cir. 2017)..........................................................8

*Minn. Voters All. v. Mansky*,
  585 U.S. 1 (2018) ...........................................................................9

*Moody v. NetChoice*,
  603 U.S. 707 (2024)......................................................................1, 9

*NAACP v. Alabama ex rel. Patterson*,
  357 U.S. 449 (1958)......................................................................2, 6

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville,*
508 U.S. 656 (1993) ................................................................................................7, 9

*NetChoice v. Att'y Gen., Fla.,*
34 F.4th 1196 (11th Cir. 2022) ...................................................................................8

*NIFLA v. Becerra,*
585 U.S. 755 (2018) .....................................................................................................9

*Nnebe v. Daus,*
644 F.3d 147 (2d Cir. 2011) ............................................................................7, 10-12

*Padberg v. McGrath-McKechnie,*
203 F. Supp. 2d 261 (E.D.N.Y. 2002)......................................................................10

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,*
551 U.S. 701 (2007) .....................................................................................................9

*PDE v. Linn Marr Cmty Sch. Dist.,*
83 F.4th 658 (8th Cir. 2023) ....................................................................................7, 8

*PDE v. Olentangy Local Sch. Dist. Bd. of Educ.,*
684 F. Supp. 3d 684 (S.D. Ohio 2023).......................................................................7

*SFFA v. Harvard,*
600 U.S. 181 (2023) .................................................................................................4, 9

*Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.,*
585 F.3d 58 (2d Cir. 2009) ..........................................................................................2

*Speech First v. Cartwright,*
32 F.4th 1110 (11th Cir. 2022) ...................................................................................8

*Speech First v. Fenves,*
979 F.3d 319 (5th Cir. 2020)........................................................................................8

*Speech First v. Sands,*
69 F.4th 184 (4th Cir. 2023) ........................................................................................8

*Speech First v. Schlissel,*
939 F.3d 756 (6th Cir. 2019)........................................................................................8

*Speech First v. Shrum,*
92 F.4th 947 (10th Cir. 2024) ......................................................................................8

*Tenn. Conf. of NAACP v. Lee,*
105 F.4th 888 (6th Cir. 2024) ....................................................................................11

*UAW v. Brock,*
477 U.S. 274 (1986).....................................................................................2, 4-6, 11

iv

*United Food & Com. Workers Union v. Brown Group*,
  517 US. 544 (1996) ........................................................................ 4-5

*United States v. Smith*,
  949 F.3d 60 (2d Cir. 2020) ............................................................. 2

*Warth v. Seldin*,
  422 U.S. 490 (1975) ......................................................................... 9

*Warth v. Seldin*,
  495 F.2d 1187 (2d Cir. 1974) ........................................................ 12

## Other Authorities

*About the ACLU* (archived Apr. 25, 2025), perma.cc/373L-DMU4 ................................. 6

Fed. R. App. P. 40 .................................................................................. 9, 11

**RULE 40 STATEMENT**

This circuit—and *only* this circuit—holds that 42 U.S.C. §1983 bans associational standing. In other words, membership associations cannot sue on behalf of their members when state actors violate the Constitution. That rule is an accident of history: It comes from *Aguayo v. Richardson*, a circuit precedent that predates associational standing and guessed wrong about how it would work. 473 F.2d 1090, 1099-100 (2d Cir. 1973). Later panels followed *Aguayo* with little analysis.

No one thinks the rule from *Aguayo* is right. If associations can't sue under §1983, then countless Supreme Court decisions are wrongly decided—nearly one every Term. *E.g.*, *Moody v. NetChoice*, 603 U.S. 707 (2024). No other circuit would entertain the notion that §1983 bans associational standing; the argument is so weak that defendants don't even try it in other courts. *Cf. Centro de la Comunidad Hispana v. Oyster Bay*, 868 F.3d 104, 123 (2d Cir. 2017) (Jacobs, J., dissenting). And it's no exaggeration to say that, if the full Court considered this question anew, the notion that §1983 forecloses associational standing would probably get zero votes.

Though this circuit made do under *Aguayo* for some time, that compromise lacked stability and recently ended. Panels tried to make up for *Aguayo*'s error by letting associations assert "tenuous" theories of standing based on supposed diversions of resources. *Id.* But the Supreme Court severely curtailed, if not overruled, that theory in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394-96 (2024). If this Court maintains *Aguayo*, associations will be left with *no* way to prove standing in this circuit—an

1

unfortunate result, since associational standing is "advantageous both to the individuals represented and to the judicial system as a whole." *UAW v. Brock*, 477 U.S. 274, 289 (1986). Without the help of these "representative[s]," the "constitutional rights" of many—especially the unpopular and underresourced—"could not be effectively vindicated." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958).

*Aguayo* should be overruled—swiftly and now. This case presents an ideal vehicle because Defending Education had the dismissal of its complaint affirmed solely under *Aguayo*. And while overruling *Aguayo* would be a good use of the full Court's resources, this Court could do so without full briefing and argument. Either the panel or the full Court could "circulat[e]" an opinion overruling *Aguayo* to "all active members of this Court" and, after "receiv[ing] no objection," publish the opinion and reverse. *United States v. Smith*, 949 F.3d 60, 65 (2d Cir. 2020); *Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 (2d Cir. 2009). That course would also spare the parties from having to seek, and the Supreme Court from having to reject, *Aguayo* on certiorari. No matter the procedure, rehearing should be granted and *Aguayo* should be overruled.

## BACKGROUND

The Croton-Harmon school district has aggressive speech codes. These vague policies against "hate speech," "harassment," "incivility," and the like impose viewpoint-based restrictions on students' speech, both on and off campus, on all sorts of topics. *See* SDNY-Doc.1 ¶¶38-83. Defending Education, a membership association that protects the rights of K-12 students, challenges those speech codes. It represents at

least three members whose children attend school in the district. SDNY-Doc.1 ¶¶84-150. Those members' children have unpopular views that they wish to share but refrain because their speech is arguably covered by the district's policies. SDNY-Doc.1 ¶¶98-106, ¶¶119-31, ¶¶141-47.[1]

DE filed a lawsuit under §1983. Though it explained why its constitutional claims have merit, DE acknowledged that its case had to be dismissed under this Court's decisions in *Do No Harm v. Pfizer*, 96 F.4th 106 (2d Cir. 2024) and *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973). SDNY-Doc.6-1. Under *Pfizer*, DE lacked standing because it referred to its members only with pseudonyms. 96 F.4th at 118-19. And under *Aguayo*, DE lacked standing because associations cannot sue under §1983. 473 F.2d at 1099. The district court dismissed the case under *Pfizer* and *Aguayo*, allowing PDE to "go up to the Second Circuit." SDNY-Doc.39 at 16:12-17; *accord* CA2-Doc.2.

On appeal, DE filed a petition for initial hearing en banc because the full Court's intervention was required to overturn *Pfizer* and *Aguayo*. CA2-Doc.18.1. The Court denied that petition. CA2-Doc.20.1. Meanwhile, the panel that decided *Pfizer* vacated its opinion. *Do No Harm v. Pfizer*, 126 F.4th 109, 123 (2d Cir. 2025). In a revised opinion, the *Pfizer* court held that an association's use of pseudonyms does not necessarily require the dismissal of its complaint, stressing "this Court's decision in *Building and*

---

[1] When it filed this lawsuit, Movant was called "Parents Defending Education." It has since changed its name to "Defending Education." *See* CA2-Doc.43.1. For consistency, Movant will refer to itself as "Defending Education" throughout this motion.

3

*Construction Trades Council of Buffalo, New York and Vicinity v. Downtown Development, Inc.*, 448 F.3d 138 (2d Cir. 2006), in which we concluded that an organizational plaintiff need not identify specific injured members by name at the pleading stage." 126 F.4th at 122 n.7. No longer constrained by *Pfizer*, the panel here affirmed the dismissal of DE's complaint only under *Aguayo*. *See* CA2-Doc.44.1.

## REASONS FOR GRANTING THE MOTION

Associational standing is a well-established and important tool for vindicating federally protected civil rights. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 341-43 (1977). *Every* circuit (except for this one) allows associations to bring §1983 claims on behalf of their members, and the Supreme Court has repeatedly considered cases involving such claims. This Court stands alone in refusing to permit associational claims under §1983. It should grant this motion to overrule that line of circuit precedent.

I.   **As a matter of first principles, associations have standing to vindicate their members' rights under §1983.**

Associational standing dates back more than a half-century. *See United Food & Com. Workers Union v. Brown Group*, 517 US. 544, 551-52 (1996). Today, associations regularly appear in court to assert claims on their members' behalf, leveraging their institutional expertise on matters ranging from environmental policy to school admissions. *E.g., Friends of the Earth v. Laidlaw Env'tl Servs.*, 528 U.S. 167 (2000); *SFFA v. Harvard*, 600 U.S. 181 (2023). Individuals join associations precisely because they are an "effective vehicle" for promoting shared interests. *Brock*, 477 U.S. at 290. And courts

4

welcome such claims because allowing an association to "vindicate the interests of all" in "a single case," rather than duplicative individual lawsuits, conserves judicial resources. *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 187 (1951) (Jackson, J., concurring); *e.g.*, *All. for Open Soc'y Int'l v. USAID*, 570 F. Supp. 2d 533, 544 (S.D.N.Y. 2008) (associational standing promotes "judicial economy").

To be sure, some have questioned whether associational standing can be reconciled with traditional Article III principles. *E.g.*, *Hippocratic Medicine*, 602 U.S. at 399-405 (Thomas, J., concurring). But in light of its many advantages, the Supreme Court has rejected calls to "reconsider" or "reject" the doctrine. *Brock*, 477 U.S. at 288. And that choice is binding on this intermediate court. *See Bach v. Pataki*, 408 F.3d 75, 86 (2d Cir. 2005).

The Supreme Court has also given a three-part test for proving associational standing. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. These requirements reflect a combination of constitutional and prudential considerations. *Brown Group*, 517 U.S. at 555-57.

That three-part test can be, and often is, satisfied when associations sue under §1983. Individuals have standing to sue in their own right under §1983, as even *Aguayo* agreed. 473 F.2d at 1099. Advocacy groups have a clear interest in securing their

members' civil liberties; for many associations, that is their sole purpose. *E.g.*, *About the ACLU* (archived Apr. 25, 2025), perma.cc/373L-DMU4. And when an association seeks only prospective relief on a "purely legal" question, its claim does not require the participation of individual members. *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004). Plus, the "advantage[s] … to the judicial system" that support associational standing elsewhere are equally (if not more) persuasive under §1983. *Brock*, 477 U.S. at 289. Because they usually command greater resources and are less vulnerable to retaliation, associations can defend rights that "could not be effectively vindicated" if left to individual plaintiffs. *NAACP*, 357 U.S. at 459.

This case proves the point. DE easily satisfies *Hunt*'s requirements for associational standing. *See* SDNY-Doc.6-1 at 21. Its members (parents of Croton students who would engage in constitutionally protected speech if not for the district's policies) have standing to sue under §1983 in their own right; protecting student speech is in the heartland of DE's mission; and DE's claims do not require the participation of individual members because it seeks only prospective relief. SDNY-Doc.6-1 at 21. DE, a repeat player in litigation involving public schools, possesses a "reservoir of expertise" that would aid the courts. *Brock*, 477 U.S. at 289. And if DE can't bring this lawsuit, then the violation of its members' rights would go unaddressed. *See* SDNY-Doc.1 ¶150 (explaining that DE's members cannot proceed in their own names for fear of retaliation).

Federal courts have consistently applied *Hunt*'s three-part associational-standing test for claims brought under §1983. *E.g.*, *Ne. Fla. Chapter of Associated Gen. Contractors of*

6

*Am. v. Jacksonville*, 508 U.S. 656, 669 n.6 (1993); *Centro de la Comunidad*, 868 F.3d at 123 (Jacobs, J., dissenting) (collecting cases). They have done so when *this* association brought *these* claims. *E.g.*, *PDE v. Linn Marr Cmty Sch. Dist.*, 83 F.4th 658, 666-67 (8th Cir. 2023); *PDE v. Olentangy Local Sch. Dist. Bd. of Educ.*, 684 F. Supp. 3d 684, 694-98 (S.D. Ohio 2023), *aff'd*, 109 F.4th 453 (6th Cir. 2024), *reh'g en banc granted, op. vacated*, 120 F.4th 536 (6th Cir. 2024). The answer here is different based solely on the arbitrary fact that, in this case, DE's members happen to live in New York.

## II. *Aguayo*'s contrary holding conflicts with every other circuit and the Supreme Court.

Under *Aguayo*, associations in the Second Circuit "d[o] not have standing to assert the rights of [their] members in a case brought under 42 U.S.C. §1983." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Still today, why that would be the law remains anyone's guess. Every court that can disagree does.

*Aguayo* itself contains no reasoning. The opinion admits that associational standing is okay under other statutes but insists that §1983 is different without explaining why. *See* 473 F.2d at 1099-100. It offers only the conclusory assertion that §1983's "language" and "history" do not "sugges[t] that an organization may sue under the Civil Rights Act for the violation of rights of members." *Id.* at 1099.

Later panel opinions have offered their own rationales, reading *Aguayo* to say that §1983 is somehow unique because "the rights it secures" are "personal"; but that explanation fares even worse. *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of*

*Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984). Section 1983 doesn't secure "any substantive rights at all"; it is a "cause of action" for violations of *other* constitutional and statutory rights. *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 617-18 (1979). While those underlying rights are personal, the whole point of associational standing is that the association is suing as a representative to assert the rights "of its members." *Hunt*, 432 U.S. at 342. Put differently, courts do not ask whether the *association* has a cause of action; they ask whether the association's *members* do. *See Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 403 (1987); *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557 (6th Cir. 2021). And, again, no one doubts that individuals can sue under §1983. So the notion that associations cannot sue under §1983 because the rights it protects are "personal" is a non sequitur.

That's why this Court is alone in prohibiting associations from suing under §1983. Every other circuit allows associations to sue on behalf of their members under §1983. *See Centro de la Comunidad*, 868 F.3d at 123 (Jacobs, J., dissenting) (collecting cases).[2] Since this Court's precedent "conflicts with [the] authoritative decision[s] of

---

[2] *See also, e.g., Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for Bos.*, 89 F.4th 46 (1st Cir. 2023); *Contractors Ass'n of E. Pa. v. Philadelphia*, 945 F.2d 1260 (3d Cir. 1991); *Speech First v. Sands*, 69 F.4th 184 (4th Cir. 2023); *Speech First v. Fenves*, 979 F.3d 319 (5th Cir. 2020); *Speech First v. Schlissel*, 939 F.3d 756 (6th Cir. 2019); *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636 (7th Cir. 2017); *Linn Mar*, 83 F.4th 658 (8th Cir.); *ACLU of Nev. v. Heller*, 378 F.3d 979 (9th Cir. 2004); *Speech First v. Shrum*, 92 F.4th 947 (10th Cir. 2024); *Speech First v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022); *NetChoice v. Att'y Gen., Fla.*, 34 F.4th 1196 (11th Cir. 2022); *Metro. Wash. Chapter, Associated Builders & Contractors v. District of Columbia*, 62 F.4th 567 (D.C. Cir. 2023).

[o]ther United States court[s] of appeals," en banc review is appropriate. Fed. R. App. P. 40(b)(2)(C).

*Aguayo* runs afoul of Supreme Court precedent too. *See* Fed. R. App. P. 40(b)(2)(B) (courts should go en banc to review a panel decision that "conflicts with a decision of the United States Supreme Court"). Notably, the sole Supreme Court decision on which *Aguayo* relied is *Hague v. CIO*, 307 U.S. 496, 527 (1939), which suggested that §1983 protects only "natural, not artificial, persons." *See* 473 F.2d at 1099. The Supreme Court has since reversed course on that point. *E.g.*, *Burwell v. Hobby Lobby*, 573 U.S. 682, 707-09 (2014) ("person" in federal statutes includes "'artificial entities'"). But in any event, *Hague* said "nothing about whether [associations] can stand in the place of their members," whose rights *are* constitutionally protected. *Centro de la Comunidad*, 868 F.3d at 123 (Jacobs, J., dissenting). And shortly after this Court decided *Aguayo*, the Supreme Court confirmed that "an association" does "have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975); *see also Hunt*, 432 U.S. at 342 ("[U]nder prior decisions of this Court," it is "clear" that an association has standing to bring an "action as the representative of its constituents").

Since *Warth* and *Hunt*, the Supreme Court has repeatedly decided cases where associations asserted their members' constitutional claims under §1983.[3] Despite this

---

[3] *E.g.*, *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. 656; *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007); *Minn. Voters All. v. Mansky*, 585 U.S. 1 (2018); *NIFLA v. Becerra*, 585 U.S. 755 (2018); *SFFA*, 600 U.S. 181; *NetChoice*, 603 U.S. 707.

"'raft of Supreme Court precedent,'" panels of this Court have persisted in applying *Aguayo*'s contrary rule. *Nnebe*, 644 F.3d at 156 & n.5. In *League of Women Voters*, for example, this Court reiterated *Aguayo*'s conclusion that associations "lac[k] standing under §1983." 737 F.2d at 160-61. But *League of Women Voters* did not even mention—let alone grapple with—*Warth*, *Hunt*, or any of the Supreme Court's many cases entertaining associational claims under §1983. Nor have any of this Court's other decisions in the years since. *See Centro de la Comunidad*, 868 F.3d at 123 (Jacobs, J., dissenting) ("This Circuit has adhered to *Aguayo* without ever expressly considering the impact of *Warth* or *Hunt*."). Nevertheless, panels today feel "bound" by *League of Women Voters*' "implicit determination" that *Aguayo* "survives" the Supreme Court's intervening caselaw. *Nnebe*, 644 F.3d at 156 n.5; *accord Knife Rights v. Vance*, 802 F.3d 377, 387-88 (2d Cir. 2015).

Instead of jettisoning *Aguayo*'s outdated rule, courts in this circuit have been forced to rely on alternative theories of direct organizational standing. Unable to bring claims on behalf of their members, associations must claim injury to themselves based on diversion of resources. *E.g.*, *Nnebe*, 644 F.3d at 156-57; *Centro de la Comunidad*, 868 F.3d at 110-11; *Mental Disability Law Clinic v. Hogan*, 519 F. App'x. 714, 717 (2d Cir. 2013); *DCCC v. Kosinski*, 614 F. Supp. 3d 20, 44-45 (S.D.N.Y. 2022); *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 274-77 (E.D.N.Y. 2002) (all relying on a diversion-of-resources theory). That *Aguayo* has pressured this Court to accept such "tenuous and pretextual" claims of direct organizational injury is reason enough to overrule it. *Centro de la Comunidad*, 868 F.3d at 123 (Jacobs, J., dissenting).

10

But now even that stopgap is gone. Last term, in *Hippocratic Medicine*, the Supreme Court rejected the notion that an association has standing "when [it] diverts its resources in response to a defendant's actions." 602 U.S. at 395. *Hippocratic Medicine* thus "creates uncertainty" over the continued validity of the diversion-of-resources theory. *Tenn. Conf. of NAACP v. Lee*, 105 F.4th 888, 905 (6th Cir. 2024). It at least dramatically curtails that theory, which—when combined with *Aguayo*—leaves associations unable to bring *any* claims under §1983 in this circuit. That result is untenable given the "special features, advantageous both to the individuals represented and to the judicial system as a whole," that accompany "suits by associations." *Brock*, 477 U.S. at 289.

What *is* certain is that *Aguayo* will continue to distort this circuit's standing jurisprudence and thwart legitimate §1983 claims "until such time as [it is] overruled" by the "*en banc*" court. *Nnebe*, 644 F.3d at 156 n.5. The time to do so is now.

### III. Associational standing under §1983 is an important issue.

That *Aguayo* splits from the Supreme Court and every other circuit is reason enough to overrule it. But review is also appropriate because *Aguayo*'s rule is unprincipled and unfair and threatens to undermine associational standing in other contexts. This issue has "exceptional importance." Fed. R. App. P. 40(b)(2)(D).

Congress enacted §1983 to ensure aggrieved parties could vindicate their rights in federal court. But *Aguayo* shuts the courthouse doors to organizations like DE when they bring §1983 claims on behalf of their members. In doing so, it treats §1983 claims differently from every other federal cause of action, without explaining *why* §1983

11

should be singled out. And because §1983 is the "remedial vehicle for raising claims based on the violation of constitutional rights," *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016), *Aguayo* has the perverse effect of placing constitutional rights on *worse* footing than statutory ones. In the Second Circuit, for example, an association can sue over improper waste disposal on an empty building lot, *see Bldg & Constr. Trades Council of Buffalo v. Downtown Development*, 448 F.3d 138 (2d Cir. 2006) (suing under the Resource Conservation and Recovery Act and the Clean Water Act), but not over a school violating students' fundamental speech rights, *see* CA2-Doc.44.1. That counter-intuitive regime is not what Congress contemplated when it adopted §1983.

    *Aguayo*'s harms do not stop at §1983. Some panels and judges in this circuit have read *Aguayo* to also prohibit associational standing under *every* provision of the Civil Rights Act, including §1981's ban on racial discrimination in contracting. *E.g.*, *Do No Harm v. Pfizer*, 646 F. Supp. 3d 490, 509 (S.D.N.Y. 2022) (§1981), *vacated on other grounds*, 126 F.4th 109 (2025); *Warth v. Seldin*, 495 F.2d 1187, 1194 (2d Cir. 1974) (§1981, §1982, and §1983). Until this Court overturns *Aguayo*, judges and litigants will continue to be confused about the scope of associational standing in the Second Circuit.

*    *    *

    Panels in this circuit have noted before that, to correct course on associational standing under §1983, en banc intervention is required. *E.g.*, *Nnebe*, 644 F.3d at 156 n.5; *Knife Rights*, 802 F.3d at 387-88; *Centro de la Comunidad*, 868 F.3d at 123 (Jacobs, J., dissenting). This case presents an ideal vehicle to do so. DE is the sole plaintiff, it sued

12

solely on behalf of its members, and it brought claims solely under §1983. The district court dismissed this case under *Aguayo*, and the panel confirmed that *Aguayo* is the only roadblock to DE's suit. Unless this Court overrules *Aguayo* and reverses the district court, advocacy groups like DE will be unable to vindicate their members' federal civil rights in New York, Connecticut, or Vermont.

## CONCLUSION

The Court should grant rehearing and overrule *Aguayo*.

Dated: May 6, 2025

Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423

Respectfully submitted,

*/s/ J. Michael Connolly*

J. Michael Connolly
James F. Hasson
Daniel M. Vitagliano*
Paul R. Draper*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com

*Supervised by principals of the firm who are
admitted to practice in Virginia*

*Counsel for Defending Education*

13

## CERTIFICATE OF COMPLIANCE

This motion complies with Local Rule 40.2 and Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,397 words, excluding the parts that can be excluded. This motion also complies with Federal Rule of Appellate Procedure Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: May 6, 2025                               */s/ J. Michael Connolly*

## CERTIFICATE OF SERVICE

I filed this motion on the Court's electronic filing system, which will email everyone requiring notice.

Dated: May 6, 2025                               */s/ J. Michael Connolly*

# Exhibit A

S.D.N.Y.—W.P.
24-cv-4485
Seibel, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

―――――――――

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of April, two thousand twenty-five.

Present:

> Guido Calabresi,
> Barrington D. Parker,
> William J. Nardini,
> *Circuit Judges*.

―――――――――――――――――――――――――――――

Parents Defending Education,

> *Plaintiff-Appellant*,

> v.                                                                 24-1900

Croton-Harmon Union Free School District, et al.,

> *Defendants-Appellees*.

―――――――――――――――――――――――――――――

Appellant moves for summary affirmance. Upon due consideration, it is hereby ORDERED that the motion is GRANTED. *See Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1973); *see also United States v. Davis*, 598 F.3d 10, 13 (2d Cir. 2010).

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court

